*In the Matter of the Disbarment of Vernon H. Burke.

1. Power to Review and Modify Order of Disbarment.

The circuit court has power, upon motion of a disbarred attorney, acknowledging his wrong, and regretting it, accompanied by a petition signed by a large number of attorneys, signifying that they would be satisfied with a modification of the order, to review and modify its former judgment, without further evidence and in the absence of a report by a committee appointed to act on behalf of the court in producing anything which might be produced as to why action should not be taken.

2. Order Modified and Applicant Reinstated.

Applicant for modification of the order of disbarment was disbarred in February, 1899, on the charge of misconduct in office, in that he, as agent of and acting with a common pleas judge, was guilty of extorting a large sum of money from a person who was threatened with being named as co-respondent in divorce proceedings. In December, 1900, applicant filed a motion for modification of the order, which would amount to reinstatement, acknowledging his wrong and regretting it, but without evidence of restoration of money extorted, which motion was accompanied by a petition signed by a large number of attorneys, signifying that they would be satisfied with a modification of the order of disbarment. A committee appointed to act in behalf of the court in producing anything which might be produced as to why action should not be taken made no report. A majority of the court held that as restoration of funds secured was impossible, such action need not be a condition precedent and that, on principles of humanity, applicant being a young man, and having been manly and straightforward in disbarment proceedings, and his conduct, as observed by the court, having been blameless since then, and the purpose of the punishment having been accomplished, he should be reinstated. (Hale, J., dissented.)

Motion for modification of judgment of disbarment.

Caldwell, J.

Mr. Burke has filed in this court, under the statute as amended at the last session of the legislature, his motion for a modification of the judgment of disbarment. He has filed with that motion a statement to the court in which he sufficiently, we think, acknowledges the wrong, that he did in the matter, and his regret that he did it. He also files with the court a petition, if we may call it such, on the part of a large number of the attorneys at this bar, signifying that they at least would be satisfied with a modification of the judgment. And in this shape the case comes before us for action.

As the statute provides for us to appoint a committee to act on behalf of the court really in way of producing anything that may be pro-

---

* For decision in disbarment proceedings, see 9 Circ. Dec., 350.

duced as to why this action should not be taken, we appointed the same committee that we had appointed to try the case, in the first place, to prosecute the case. That committee has taken no action by way of filing any papers or placing itself on record in the court. And this is what we have before us for the consideration of this question.

Every member of the court as it was composed at the trial of this case, believed at the time, and still believes, that the judgment at that time pronounced was correct and not too severe.

The question we are to act upon now is, whether we will modify that judgment. It is usual in cases of this kind, where money has been extorted or when any other act has been done for which the party has been punished, for the party before asking restoration, or modification, which will amount to restoration as it is asked in this case, that the party should make restoration, to some extent at least, undo the wrong that he has done ; but in this case, we are satisfied that to ask Mr. Burke to refund all or any portion of the money that he obtained wrongfully in this case would be a useless thing ; it is utterly impossible for him to do it, and he has done, in our judgment, all that he can do in presenting this matter to the court. He has come before the court with a paper that at least a majority of the court are of the opinion is sufficient to enter upon a consideration of this question.

It is the policy of all enlightened countries and christian countries to pay some regard to the amount of punishment, even after the sentence has been imposed, if the object of punishment is the reformation, the main object of the punishment is the reformation of the party punished.

There is another object, perhaps to deter others, and not to make it so light and so trifling as to make it no object of fear for others who may commit a like offense against the law ; and there is no place where it is of greater importance that heavy penalties should be dealt out to persons offending against the law than among attorneys. Attorneys are public officers ; they are officers of the court ; they hold certain relations to the state ; they help perform the functions and the duties, and are aids to the court in one of the callings that is perhaps the most trustworthy and most important that is known among men. The dignity of the state and the dignity of our courts must be upheld, and the morality of the bar must be kept at a high standard or our courts will become useless to people as bulwarks of defense.

All this may be said, and all this the court had in mind in pronouncing this judgment. But the object and purpose of a parent in punishing a child is not to go beyond that point where the punishment has effected the remedy sought ; and that is, as I have already said, the object and purpose of all enlightened governments. The amount of that punishment cannot be known at the time the penalty is inflicted.; the amount required is uncertain ; hence all christian nations have provided such regulations that when a person being imprisoned or being punished for crime, shows by his conduct and acts that the punishment has accomplished his purpose, machinery is provided by which that party's sentence may be somewhat ameliorated, and it would seem strange if this doctrine ought not to be applied to cases of this kind. The courts at least ought to be on the side of humanity and of the proper mode and of the proper amount of punishment equal to the state of guilt of the party. When punishment goes beyond this, when it goes beyond its design, it accomplishes no good beyond that to society ; it accomplishes

Disbarment of Burke.

no good beyond that to the party being punished, and it accomplishes no good to anybody. That is recognized so thoroughly, so thoroughly recognized by all the states of this union, that it seems to a majority of us, at least, that this court ought to act on that principle.

We have had Mr. Burke under our observation ever since his trial and disbarment, knowing or supposing, that something of this kind might come before us. And we have observed the conduct of the man, and we may go back to the time of his trial. In every way he was manly and, we believe, truthful to the very letter almost, in all of his testimony before this court. At least there was no variation except that that would come to almost any mind which is greatly biased and influenced in his own favor or in favor of his client.

Since his disbarment he has not railed against the court; he has not condemned the court that we know of, and certainly has upheld the court in talking to its members. His conduct throughout has been that of manliness and that of integrity and that of truthfulness. His conduct since then, so far as we have been able to observe him, has been without blemish. We know of nothing, so far as we can observe or have heard, we know of nothing that he has done or said, either in act or language, that would show that he has presented to the court or members of the bar any resentful spirit. And we further know of no reason why in this case the punishment has not reached the point that it was intended to reach when it was inflicted.

Now, it may be said that the court cannot at this time modify this judgment without stultifying itself as to the judgment it gave in the case. That might be said of a man who is sentenced to the penitentiary for thirty years or perhaps twenty years; that the court in doing that, in presenting the question of the penalty, has reference to the person's surroundings, and has nothing to do with the object of the accomplishment of judgment as I have stated, and the only purpose of the punishment is to give the criminal sufficient length of time to warrant his reformation, if that can be done; and when that reformation comes earlier, or when there are strong indications of it, the enlightened state of the country interferes and gives the man his liberty.

Now, not only have we observed Mr. Burke's conduct in this regard, but here are a large number of the members of the bar that have signed this petition, and very many of them who, at the time, believed that the punishment or the judgment pronounced in the case was proper and right. These members of the bar have had Mr. Burke under their observation almost daily; and, in a matter of this kind, it will not do for us to say that simply because a petition is presented to a member of the bar he must sign it. In fact the moral condition of this bar is so high that to say that of a member of this bar in a matter of this kind would be to place upon this bar an unwarranted stigma. We cannot believe these signatures were put there only through sentiment or mere formality.

Mr. Burke is a young man. He may have before him a long life of usefulness. In granting him at this time the favor that he asks, he certainly will have the ambition, and a burning ambition, to see that the court has not misplaced its confidence. He will have every stimulant to be a man in every respect worthy of the action of the court, should the court take that action.

In considering this matter in all its aspects, the majority of the court are of the opinion that this judgment in this case ought to be modified, and a majority of the court modify the judgment from that of disbarment to suspension to terminate on December 31, 1900.

HALE, J., dissenting.

I have been unable to agree quite with my associates in the disposition just made of this motion. But I have no desire, however, to go into a discussion of the facts, or to throw a straw in the way of Mr. Burke as he is to come back to the bar.

This case was very carefully considered by the court composed as it was at the time this case was heard. I think we all felt the responsibility of the case and gave it the most careful consideration we could give. I think we all felt that we were compelled by the facts of the case to pronounce the sentence that was pronounced.

When this motion was submitted, the committee appointed to take charge of it in behalf of the public and the attorneys for Mr. Burke were present, and it was stated then that the case was submitted solely upon the testimony offered at the trial and it was said that if nothing further was to be considered by this court, then the committee did not desire to be heard.

Now, as I understand, the conclusion reached by a majority of the court goes beyond that.

Personally I have no knowledge whether Mr. Burke has reformed or otherwise. I have not a particle of knowledge about the case except as it appears from the record as it stood at the time we heard the case; and I do not know of any legitimate way that has come to the knowledge of the court of any evidence of reformation on the part of Mr. Burke. I supposed the case was submitted upon the testimony clearly and only as it appeared at the former trial and, guided by this testimony, I have been unable to bring myself to the point of changing that sentence at present.

Now as I say, I am willing to acquiesce in this matter with the rest of the bar and give Mr. Burke a fair chance; but this is what I conscientiously believe in the matter in regard to modification.

I regret very much at having to differ upon the questions of this kind with my associates.